IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| NATIONAL BANK OF TENNESSEE, ) | |
| ) | |
| Plaintiff/Counter Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| FREDERICK L. McDONALD, II, ) | |
| ) | No. 2:03-CV-401 |
| Defendant/Counter Plaintiff/ ) | |
| Third Party Plaintiff/ ) | |
| Counter Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| SCOTT WADE APPLEGATE, ) | |
| ) | |
| Third Party Defendant/ ) | |
| Counter Plaintiff. ) | |

## **MEMORANDUM OPINION**

Now before the court is the motion for summary judgment filed by plaintiff National Bank of Tennessee ("NBT") [doc. 65], pertaining both to NBT's complaint against defendant Frederick L. McDonald, II and to McDonald's counterclaim against NBT. Also before the court is NBT's motion to dismiss [doc. 60] the third-party claim of Scott Wade Applegate. For the reasons that follow, each motion will be granted.

I.

*Procedural Background*

The facts underlying this litigation have been previously set forth by the court and need not be repeated at length herein. *See Nat'l Bank of Tenn. v. McDonald*, No. 2:03-

CV-401, 2006 WL 2711682 (E.D. Tenn. Sept. 21, 2006). Briefly, McDonald guaranteed a $750,000.00 promissory note executed by Southeast Machining, LLC. NBT is the holder of the note. Because the note is now in default, NBT seeks judgment against guarantor McDonald for the unpaid balance.

Early in the procedural history of this case, McDonald filed a counterclaim [doc. 19] alleging negligence and fraud. He also filed a third-party complaint [doc. 25] alleging joint and several liability against three parties, each of whom were subsequently dismissed voluntarily. [Docs. 30, 36].

Next, following the February 13, 2006 denial of Applegate's bankruptcy discharge, McDonald filed a May 31, 2006 third-party complaint against Applegate [doc. 50], again alleging joint and several liability. Applegate subsequently answered the third-party complaint, adding both a counterclaim against McDonald (indemnity/contribution) and a third-party claim against NBT (bad faith). [Doc. 58].

NBT and Applegate are also presently litigating in state court. On April 6, 2006, NBT filed a complaint in Knox County Chancery Court seeking judgment against Applegate, as guarantor, for the unpaid note balance. On August 4, 2006, Applegate filed with the state court a motion to dismiss, arguing that the state court litigation

> is duplicative and is unnecessary due to the nature of proceedings pending in the Federal Court in Greeneville and said issues may be addressed adequately and completely there by plaintiff and eliminate a need for the instant proceeding. The defendant herein seeks to avoid defending duplicate suits and the risk of inconsistent decisions.

Similarly, in his third-party claim before this court, Applegate

> asks the Court to hear the underlying issues related to the bank's indebtedness and any asserted liability against guarantors Applegate and McDonald.
>
> . . . . On the basis of judicial economy, on the basis of avoiding inconsistent decisions on similar claims, and on the basis of this Court's ancillary and/or pendent jurisdiction, Applegate asks that this Court hear all issues between these parties [NBT, McDonald, and Applegate] related to the subject indebtedness of Southeast Machining, LLC and/or the aforementioned guarantors.

[Doc. 58].

The citizenship of the parties is not in dispute. McDonald is a citizen of Michigan. NBT and Applegate are citizens of Tennessee.

II.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Edwards v. Aguillard*, 482 U.S. 578, 594 (1987) (quoting Fed. R. Civ. P. 56(c)). "Other exhibits may be admitted into evidence and considered if the exhibits are properly authenticated and attached to an affidavit." *Guzman v. Denny's, Inc.*, 40 F. Supp. 2d 930, 935 n.3 (S.D. Ohio 1999). The movant may discharge its burden by demonstrating that the non-moving party has failed

to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Liberty Lobby,* 477 U.S. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52. "Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992).

III.

*Motion for Summary Judgment*

NBT has submitted the affidavit of William E. Newman, its Senior Vice President. Attached to Newman's affidavit are properly authenticated copies of the

4

promissory note and McDonald's guaranty. Newman states that: NBT is the holder of the note; the note is in default; and the balance owing "as of February 28, 2006[,] was $657,609.88 plus continuing interest and attorney fees[.]"

NBT has also submitted an excerpt of McDonald's January 26, 2006 deposition:

> Q: Did you have an attorney review this document [the guaranty]?
>
> A: (Witness moves head from side to side.)
>
> . . .
>
> Q: Did you read the guaranty before you signed it?
>
> A: I think so.
>
> Q: What discussions, if any, did you have with anybody at National Bank of Tennessee prior to the time that you executed this guaranty?
>
> A: I did not talk to anyone at the bank.
>
> . . .
>
> Q: What information, if any, have you ever requested from National Bank relating to Applegate, One Source or Southeast Machinery?
>
> A: I have never talked to anybody from National Bank. . . . I never requested information from National Bank.

In response, McDonald has submitted portions of Newman's deposition establishing that:

> 1. McDonald became a guarantor because "Applegate asked [the bank] if he could get another guarantor [to replace original co-guarantor] Ms. Walton."
>
> 2. Prior to the execution of McDonald's guaranty, Southeast Machining, LLC had been delinquent on "some payments" on the note.
>
> 3. All or most of the loan proceeds were sent directly from NBT to Toyoda, in satisfaction of a purchase money security interest in a Toyoda machine. NBT did not subsequently obtain a release from Toyoda, and Newman could not explain why.

Citing these facts, McDonald argues that "genuine issues of material fact exist as to whether plaintiff acted in good faith with defendant in procuring his execution of a draconian Guarantee Agreement[,]" thereby purportedly warranting both the denial of NBT's summary judgment motion and the eventual granting of compensatory and punitive damages to McDonald.[1]

Under Tennessee law, "a guarantor in a commercial transaction shall be held to the full extent of his engagements and . . . the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 804-05 (Tenn. 1975). In addition to McDonald's promise to be responsible for the full amount of indebtedness under the note, his guaranty further provides that

---

[1] McDonald filed no response to the instant motion. He did, however, respond to NBT's earlier summary judgment motion which was denied with leave to renew. The court has considered the arguments raised in McDonald's earlier response. [Doc. 42, 45].

> Guarantor represents and warrants to Lender that . . . (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

Under Tennessee law, a lender has no duty of disclosure to a guarantor unless either: (1) there is a previous fiduciary relationship between the lender and the guarantor; (2) one party "expressly reposes a trust and confidence in the other"; (3) the transaction "is intrinsically fiduciary and calls for perfect good faith," as with an insurance policy; or (4) the guarantor makes specific inquiries of the lender. *Walker v. First State Bank*, 849 S.W.2d 337, 341-42 (Tenn. Ct. App. 1992). None of these conditions mandating disclosure are present in this case. There existed no prior or contemporary fiduciary relationship between NBT and McDonald. A guaranty is not an "intrinsically fiduciary" contract, *see id.*, and McDonald admittedly posed no inquiries to NBT. As such, McDonald's argument - whether characterized as "misrepresentation," "concealment," or "bad faith" - fails. *See id.* at 341-43. Absent special circumstances, NBT was simply under "no obligation to 'hold [McDonald's] hand'" throughout the execution of the guaranty. *See id.* at 342.

The court accordingly finds no genuine issues of material fact to defeat NBT's claim or to support McDonald's counterclaim. NBT's summary judgment motion will be granted.

7

## IV.

### *Motion to Dismiss*

NBT also seeks dismissal of Applegate's third-party claim against it. Both parties correctly agree that judicial resources will be wasted and inconsistent results may be reached if this court and the state court both decide issues regarding Applegate's liability to NBT. The parties disagree, however, as to where their dispute should be heard.

NBT argues that its claim against Applegate can only be litigated in state court. Because both parties are Tennessee citizens, this court obviously does not have diversity jurisdiction over that claim. No other grounds for subject matter jurisdiction have been alleged. Therefore, according to NBT, state court is the *only* venue in which both sides of its dispute with Applegate can be presented. In response, and without citation to any pertinent authority, Applegate argues that

> [t]his Court can reasonably, fairly, and expeditiously determine all issues between the parties and can do so consistently with jurisdictional requirements and fairness to all parties. The plaintiff's attempts to maintain separate suits and to expend substantial resources for which it will certainly seek reimbursement against McDonald and Applegate is unnecessary and unwarranted. Applegate did not seek to be a defendant in either of the actions pending against him, but now that he is required to participate, he would ask the Court to eliminate, where possible, multiplicity of suits and unreasonable use of resources.

Applying the jurisdictional requirements of 28 U.S.C. § 1367 to the unique procedural posture of this case, the undersigned agrees with NBT.

Based on diversity of citizenship, this court has jurisdiction over NBT's principal claim against McDonald. The court may then exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . . includ[ing] claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). However, if original jurisdiction is based solely on diversity, "the district courts shall *not* have supplemental jurisdiction . . . over claims by *plaintiffs* against persons made parties under Rule 14" if exercising supplemental jurisdiction over such claims would destroy diversity. 28 U.S.C. § 1367(b) (emphasis added).

Applegate is correct that § 1367(b) does not prevent him from asserting the third-party claim presently before the court. Section 1367(b) applies only to *original* plaintiffs - not to cross-claimants, counterclaimants, or third parties. *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726-27 (2d Cir. 2000). "The supplemental jurisdiction provision, 28 U.S.C. § 1367(b), states congressional intent to prevent original plaintiffs - but not defendants or third parties - from circumventing the requirements of diversity." *Grimes v. Mazda N. American Operations*, 355 F.3d 566, 572 (6th Cir. 2004); *accord Chase Manhattan Bank v. Aldridge*, 906 F. Supp. 866, 869 (S.D.N.Y. 1995); *Guaranteed Sys., Inc. v. American Nat'l Can Co.*, 842 F. Supp. 855, 857-58 (M.D.N.C. 1994).

The court thus possesses subject matter jurisdiction over Applegate's third-party claim, whereby Applegate argues "bad faith" as a defense to liability on the note.

9

However, the court also finds itself in the awkward position of *not* having subject matter jurisdiction over NBT's principal claim against Applegate because: NBT is the plaintiff; Applegate was made a party under Rule 14 of the Federal Rules of Civil Procedure; and exercising supplemental jurisdiction over NBT's claim would destroy diversity. *See* 28 U.S.C. § 1367(b); *Grimes*, 355 F.3d at 572. In other words, the court can hear the present defense but not the claim toward which the defense is offered. *See Kearney*, 212 F.3d at 727 ("Under [§ 1367(b)], a non-diverse fourth-party defendant such as Taylor Forge may bring claims against plaintiff Viacom ('downsloping claims'), but Viacom may not bring claims - or counterclaims - against Taylor Forge ('upsloping claims').").

Therefore, on the exceptional circumstances of this case, the court finds compelling reasons not to exercise supplemental jurisdiction over Applegate's third-party claim. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . in exceptional circumstances, [if] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The "compelling reasons" found by the court are: its inability to hear NBT's principal claim pursuant to § 1367(b); the possibility of inconsistent results; and the waste of judicial resources.

As may be apparent, the court questions whether Applegate's third-party claim is in fact a "claim" at all, or merely a defense to NBT's suit - which is in turn not even before the court. Regardless of whether Applegate's third-party claim is a "claim" in substance or merely in form, NBT's motion to dismiss must be granted.

Orders consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge